IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA MCNULTY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 19-5029 |
| | : | |
| THE MIDDLE EAST FORUM, et al | : | |
| Defendant | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                    December 30, 2020

## I.     INTRODUCTION

Presently before the Court is Defendant's The Middle East Forum ("Defendant" or "MEF") motion to hold Plaintiff Patricia McNulty ("Plaintiff" or "McNulty") and her counsel Seth Carson, Esq. ("Carson") in contempt for McNulty's "failure to comply with [a] court order compelling [her] to comply with her discovery obligations" and Carson's "failure to appear at two Court-scheduled status conferences." (Doc. 38, No. 2.) ("Def. Br.") Defendant requests relief in the form of dismissal of McNulty's claims against it and an award of attorney's fees and costs. (Doc. 38, No. 1.) We also note that the docket reflects an earlier "motion to compel" which we do not address to the extent that the only relief it sought from Judge Brody was that she hold a discovery conference. (Doc. 36.) This motion will be denied as moot.

These motions were originally submitted to Judge Brody, but were referred to us for resolution on December 9, 2020. (Doc. 39.) Remarkably, Plaintiff and Carson have provided no response to these motions up to the present date, in clear violation of our Local Rules, and the time for doing so has expired. E.D. Pa. R. 7.1(c). Accordingly, the only documentation before us is that submitted by Defendant or which otherwise appears on the docket.

1

### A.  Plaintiff's Noncompliance with Discovery Orders

Plaintiff filed her complaint against Defendant alleging employment discrimination on October 27, 2019. (Doc. 1.) On January 17, 2020, Judge Brody entered a scheduling order setting the discovery deadline for October 22, 2020. (Doc. 19.) On September 29, 2020, Defendant's counsel submitted a letter to Judge Brody explaining that MEF had served its first request for document production on January 28, 2020 but that, "[t]o date, Plaintiff has not served written responses to the document requests nor has Plaintiff produced documents." (Doc. 29.) In that letter, Defendant requested that Judge Brody hold a telephone conference to discuss the discovery issue. (*Id.*)

Apparently, in response to that request, counsel for the parties appeared before Judge Brody for that conference on October 15, 2020. (Def. Br. at 3.) Judge Brody then entered an order directing Plaintiff to "respond to Defendants' request for a telephone conference . . . and resolve the discovery dispute **on or before October 22, 2020**."[1] (Doc. 33) ("Discovery Order"). October 22, 2020 came and went with Plaintiff taking no action in response to the Discovery Order, making no effort to engage with MEF, and failing to produce any responsive documents "despite numerous requests." (Def. Br. at 3.)

### B.  Carson's Failure to Appear at Status Conferences

Independent of this activity, Judge Brody referred this matter to us for settlement purposes. We held an initial telephone conference with counsel on April 20, 2020 where it was decided that the parties needed to assess their positions by undertaking discovery. (Doc. 26.) On August 28, 2020, we filed a notice for a further status conference with counsel scheduled for

---

[1] Judge Brody also entered an amended scheduling order on October 15, 2020, in which she extended the discovery deadline to February 1, 2021. (Doc. 34.) The "discovery dispute" referenced in this Order relates to Plaintiff's failure to respond to Defendant's January 28, 2020 request for document production. *See* Doc. 29.

September 29, 2020. (Doc. 28.) Carson failed to appear for that conference without providing any advance notice or subsequent explanation of his absence. We took no action in response to Carson's failure other than to schedule another status conference that would be held on October 29, 2020. (Doc. 35.) Carson failed to appear for the October 29 status conference, and he again failed to provide any advance notice or subsequent explanation of his absence. This motion followed.

## II.    LEGAL STANDARD

Generally, trial courts have wide discretion in fashioning remedies, including sanctions, where appropriate in the event of discovery disputes or violations of orders. *See, e.g.*, *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 70 (3d Cir. 1991). The Court's authority to sanction a party in three specific circumstances is applicable here. First, a court may sanction a party that fails to obey a court order to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A)(v). Second, a court may sanction a party that fails to respond to a request for document production and inspection pursuant to Federal Rule of Civil Procedure 34(a)(1)(A). Fed. R. Civ. P. 37 (d)(1)(A)(ii). Third, a court may sanction a party that fails to appear at a pretrial conference. Fed. R. Civ. P. 16(f)(1)(A). Under these three circumstances, the court "may issue further just orders" pursuant to Fed. R. Civ. P. 37(b)(2)(A).[2] That rule provides a non-exhaustive list of such "just orders":

> (i)      directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

---

[2] For sanctions issued pursuant to Fed. R. Civ. P. 37 (d)(1)(A)(ii), "sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)." Fed. R. Civ. P. 37 (d)(3). For sanctions issued pursuant to Fed. R. Civ. P. 16(f)(1)(A), "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii)." Fed. R. Civ. P. 16(f)(1)(A).

(ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Further, "instead of or in addition to the orders above, the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added); *see also* Fed. R. Civ. P. 37 (d)(3) (requiring costs to accompany sanctions for failure to respond to a Rule 34 request); Fed. R. Civ. P. 16(f)(2) (requiring costs to accompany sanctions for failure to appear at a pretrial conference).

## III.   DISCUSSION

Defendant requests that we find McNulty and Carson in civil contempt and impose sanctions of dismissal of McNulty's claims and award attorneys' fees and costs. We first discuss whether McNulty and Carson's conduct constitutes grounds for civil contempt. We conclude that it does. Next, we determine that a sanction of attorneys' fees and costs is appropriate, along with requirements to comply with all obligations to advance this litigation moving forward. Finally, we determine that dismissal is not warranted at this stage but may be in the future if Plaintiff's deficiencies continue.

### A. Civil Contempt

In its motion for contempt, Defendant requests that McNulty and Carson be "found in civil contempt for failing to comply with an Order of this Court," and Carson be "found in civil contempt for failing to appear at two Court-scheduled status conferences." (Doc. 38, No. 1.) We conclude that the requirements for civil contempt are met and accordingly will hold McNulty and Carson in contempt. Next, we fashion an appropriate remedy.

### 1. McNulty and Carson are in civil contempt

For a party to be held in civil contempt, the movant must show that the "*Harris* factors" are satisfied: "(1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *John T. ex rel. Paul T. v. Delaware County Intermediate Unit*, 318 F.3d 545, 552 (3d Cir. 2003) (quoting *Harris v. City of Philadelphia*, 47 F.3d 1342, 1349 (3d Cir. 1995)). "These elements must be proven by 'clear and convincing' evidence, and ambiguities must be resolved in favor of the party charged with contempt." *United States v. Baker Funeral Home, Ltd.*, 196 F. Supp. 3d 530, 549 (E.D. Pa. 2016) (citing *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir.1994)). A court should not find contempt where "there is any reason to doubt the wrongfulness of the [alleged contemnor's] conduct." *F.T.C. v. Lane Labs-USA, Inc.*, 2011 WL 5828518, at *2 (D.N.J. Nov. 18, 2011) (citing *John T.*, 318 F.3d at 552). However, "[w]illfulness is not a necessary element of civil contempt," and, accordingly, "evidence . . . regarding . . . good faith does not bar the conclusion . . . that [the defendant] acted in contempt." *John T.*, 318 F.3d at 552 (citing *Harley–Davidson, Inc. v. Morris*, 19 F.3d 142, 148–49 (3d Cir. 1994)).

Here, it is clear that all three *Harris* factors are satisfied with regard to the Discovery Order. The Discovery Order, which directed Plaintiff to "respond to Defendants' request for a

telephone conference . . . and resolve the discovery dispute **on or before October 22, 2020**" was "a valid court order" in satisfaction of the first *Harris* factor. (Doc. 33.) Plaintiff had knowledge of this order, in satisfaction of the second *Harris* factor. Indeed, the order was entered on the docket on October 15, 2020, a full week before Plaintiff's performance of the directive in the order was required to occur. Further, Defendant states in its brief that Judge Brody discussed the substance of this order with counsel for the parties in an October 15, 2020 telephone conference, immediately prior to formally entering it. (Def. Br. at 3.) Plaintiff plainly disobeyed this order, in satisfaction of the third *Harris* factor, through her failure to make any effort to respond to Defendant's request for a telephone conference or to otherwise resolve the discovery dispute, as the order expressly required. (Doc. 36.) Accordingly, we find McNulty and Carson are in civil contempt for their failure to comply with Judge Brody's Discovery Order.

Further, Carson's failure to appear at two consecutive status conferences before this Court is grounds for civil contempt. Indeed, Federal Rule of Civil Procedure 16(f) authorizes the Court to impose sanctions, including civil contempt, for a party's failure to appear at a pretrial conference. Fed. R. Civ. P. 16(f)(1)(A). Our August 28, 2020 notice to appear for a status conference on September 29, 2020 and our October 27, 2020 notice to appear for a status conference on October 29, 2020 were both "valid orders" in satisfaction of the first *Harris* factor. With regard to the second factor, Carson had knowledge that he was required to attend both conferences, as both notices were entered on the docket in advance of the conferences. Moreover, by virtue of his failure to respond to this contempt motion, Carson has provided no basis for us to harbor any doubt that our filing of the notices conferred upon him knowledge of his obligations to the Court. Finally, in satisfaction of the third *Harris* factor, Carson plainly violated the orders through his failure to appear at both conferences and his failure to provide

any explanation for his absence. Accordingly, we find Carson in civil contempt for his failure to appear at the conferences.

### 2.  Contempt sanctions

Having determined that Plaintiff and Carson are in civil contempt, we turn to fashion appropriate sanctions. District courts have wide discretion in fashioning sanctions for civil contempt. *Marshak*, 595 F.3d at 493. In exercising that discretion, we are mindful that "[s]anctions for civil contempt serve two purposes: to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *Id.* at 494 (quoting *Robin Woods*, 28 F.3d at 400) (internal quotations omitted)). In this regard, Defendant requests that McNulty and Carson be ordered to pay MEF's "attorneys' fees and costs incurred as a result of [MEF's] filing of two letters with this Court regarding discovery deficiencies (Docs. 29 & 36); the instant motion for contempt; and appearances at two Court-scheduled status conferences."

Awards of attorneys' fees and costs are particularly appropriate sanctions in instances of civil contempt. Indeed, "just as attorneys' fee awards are remedial and designed to compensate complainants for losses incurred as a result of the contemnors' violations, so too are awards to cover the other expenses involved in demonstrating violations." *Robin Woods*, 28 F.3d at 400 (internal quotations and citations omitted). Further, Federal Rule of Civil Procedure 37(b)(2)(C) requires that, where a party is found in civil contempt for failure to obey a Court order, "the Court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

In addition to attorneys' fees and other costs, Plaintiff and her counsel must correct the behavior that serves as grounds for civil contempt in the first place; namely, they must comply

with Judge Brody's Order that Plaintiff engage with Defendant and resolve the dispute related to Defendant's January 28, 2020 request for document production and related subsequent requests. In resolving that dispute, Plaintiff must serve written responses and/or produce the responsive documents in accordance with her obligations under Fed. R. Civ. P. 34(b)(2)(B).[3] Finally, Plaintiff and Carson must appear at all Court-scheduled conferences, comply with all deadlines, and meaningfully participate in the advancement of this litigation moving forward. Failure to comply with these requirements will result in further sanctions, potentially including the dismissal of McNulty's claims.

### B. Dismissal

We now turn to the question of whether dismissal is an appropriate sanction at this stage. We conclude that it is not. "Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013). However, "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 869 (3d Cir. 1984). *United States v. $8,221,877.16 in United States Currency*, 330 F.3d 141, 161 (3d Cir. 2003) ("The sanction of dismissal is

---

[3] We note that these requirements render moot Defendant's October 29 letter, which had been characterized on the docket as a "motion to compel." (Doc. 36.) In the letter, Defendant described Plaintiff's failure to engage with it to "resolve the discovery dispute." (Doc. 36.) The relevant "discovery dispute" is Plainitff's failure to respond to Defendant's January 28, 2020 request for document production. (Doc. 29.) Defendant's letter does not request that Judge Brody order Plaintiff to produce documentation or otherwise respond to the request. (Doc. 36.) Rather, it requests a telephone conference "to address this discovery issue." (*Id.*) As set out fully in the accompanying Order, our directive here requires Plaintiff to engage with Defendant and resolve the discovery dispute by serving written responses and/or producing responsive documents to the underlying request, to the extent required by the Federal Rules of Civil Procedure. This Order therefore resolves Defendant's request as articulated in the October 29 letter. (Doc. 36.)

disfavored absent the most egregious circumstances."). To determine whether dismissal is justified, the Court must consider the six factors set out in *Poulis*:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternate sanctions; and (6) the meritoriousness of the claim or defense.

*Knoll*, 707 F.3d at 409 n.2 (citing *Poulis*, 747 F.2d at 868).

## 1. The extent of the party's personal responsibility

While the relationship between Plaintiff and Carson is unclear to us, it seems that McNulty's personal responsibility for her failure to respond to discovery requests is minimal, and her responsibility for Carson's failure to appear at status conferences is even less. Indeed, Defendant's brief suggests that Carson, not his client, is primarily responsible for Plaintiff's deficiencies in this case. (Def. Br. at 4.) Defendant has brought to our attention other actions against it that are similar to this one in which plaintiffs represented by Carson have evinced similar deficiencies. (*Id.* at 4–6.) The fact that Carson is the common denominator in several cases where plaintiffs have ignored discovery orders suggests that he is responsible for Plaintiff's deficiencies, not McNulty. This factor weighs against dismissal.

## 2. Prejudice to the adversary

"Prejudice . . . includes deprivation of information through non-cooperation with discovery, and costs expended obtaining court orders to force compliance with discovery." *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (internal citation omitted). Here, Plaintiff's failure to comply with the Discovery Order, to otherwise respond to discovery requests, and to appear for status conferences has undoubtedly prejudiced Defendant. (Def. Br. at 2.) As Defendant stated in its brief, MEF "cannot

defend itself in this action absent McNulty's meaningful participation in the discovery process, which to date, simply has not happened." (Def. Br. at 4.) As a result of Plaintiff's non-participation in discovery, MEF has "taken the lead in all necessary joint submissions." Further, Carson's failure to appear at two status conferences related to settlement negotiations has stalled any such discussions entirely and has prejudiced Defendant's ability to resolve this action through settlement. This prejudice weighs in favor of dismissal.

### 3. History of dilatoriness

A "party's problematic acts must be evaluated in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Id.* Here, Plaintiff's conduct evinces a history of dilatoriness. Since the inception of this litigation, Plaintiff has refused to respond to discovery requests as required by the Federal Rules of Civil Procedure. (Def. Br. at 4.) She failed to comply with Judge Brody's Discovery Order, and her counsel has twice failed to appear at status conferences in front of this Court. Moreover, neither Plaintiff nor her counsel has offered any explanation for these deficiencies. Indeed, Plaintiff did not even respond to this motion for contempt. This factor also weighs in favor of dismissal.

### 4. Whether the attorney's conduct was willful or in bad faith

"This factor requires the District Court to consider whether the conduct was 'the type of willful or contumacious behavior which was characterized as flagrant bad faith.'" *Patel v. Patel*, 2015 WL 4391304, *4 (E.D. Pa. July 17, 2015) (quoting *Adams*, 29 F.3d at 875). "Willfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 875. In *Patel*, the court found bad faith where "the lack of communication from either Plaintiff or his counsel to defense

counsel has been extensive and has led to a significant delay in the progression of the case." *Patel*, 2015 WL 4391304, at *4. The *Patel* court also considered that "Plaintiff and his attorney have not responded to any motion filed against them, including the instant dismissal motion."

Here, Plaintiff and her counsel have failed to respond to discovery requests in accordance with their obligations under the Federal Rules of Civil Procedure. Indeed, Defendant served its first request for document production pursuant to Rule 34 on January 28, 2020. (Doc. 29.) That rule requires a response to be served within thirty days. Fed. R. Civ. P. 34(b)(2)(A). Nearly eleven months have passed since that request was served, and Plaintiff has not responded. Further, Plaintiff failed to comply with Judge Brody's Discovery Order despite having a full week's notice to do so. Carson also failed to appear for two consecutive Court-scheduled status conferences. Because Carson had notice of these conferences and has provided no explanation for his absence, we are left to assume these absences were deliberate and in bad faith. Finally, as contemplated in *Patel*, Plaintiff has not responded to motions filed against them, including this one. This factor therefore weighs in favor of dismissal.

### 5.  Alternative sanctions

"Before dismissing a case with prejudice, a district court should consider alternative sanctions." *Adams* 29 F.3d at 876. "[D]istrict courts should be reluctant to deprive a plaintiff of the right to have [her] claim adjudicated on the merits." *Id.* (citing *Titus v. Mercedes Benz*, 695 F.2d 746, 749 (3d Cir. 1982)). Specifically, dismissal may be inappropriate where sanctions such as "favorable treatment on evidentiary issues affected by the delay . . . and payment of attorneys' fees and/or costs" may remedy prejudice against the movant. *Id.*

In evaluating this factor, we are mindful that to date there has been only one extension of the fact discovery deadline in this case, and that that deadline is set for February 1, 2021, more

than a month from now. (Doc. 34.) Further, we observe that Judge Brody extended the deadline from October 22, 2020 to February 1, 2021 in an amended scheduling order entered on October 15, 2020, the same day that she ordered Plaintiff to resolve discovery issues with Defendant. (*Id.*) Because there is still time left in which to complete fact discovery in compliance with the current scheduling order, we find that alternative sanctions including an award of costs and fees and an order that Plaintiff comply with all orders and obligations moving forward may remedy the prejudice to MEF. Finally, dismissal may be more appropriate at a future date in the event that these less severe sanctions prove ineffective. *See, e.g.*, *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 695–96 (3d Cir. 1988). This factor weighs heavily against dismissal.

### 6. Meritoriousness of the claim

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Poulis*, 747 F.2d at 869–70. Here, as in *Patel*, "Plaintiff's Complaint is the only information that we have supporting [her] lawsuit; however, on its face, its allegations have been held to be claims upon which relief can be granted." *Patel*, 2015 WL 4391304, at *5. Indeed, Judge Brody denied Defendant's motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. 15.) Further, Plaintiff's complaint contains extensive factual allegations that, if supported by the evidence, "would support recovery by Plaintiff." *See* Doc. 14. Accordingly, while Plaintiff's failure to provide discovery renders us unable to evaluate whether evidence supports the claims, the claims are nonetheless facially meritorious. *See Patel*, 2015 WL 4391304, at *5. This factor weighs against dismissal.

### 7.  **Summary of *Poulis* factors**

"*Poulis* recognized that the sanction of dismissal is disfavored." *Bedwell*, 843 F.2d at 696. As our above analysis illustrates, certain of the *Poulis* factors weigh in favor of dismissal, while others weigh against it. We therefore consider that, "in a close case, 'doubts should be resolved in favor of reaching a decision on the merits.'" *Adams*, 29 F.3d at 878 (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984)). While we find Plaintiff and Carson's conduct to be irresponsible and disrespectful to the Court, we are mindful of the Third Circuit's instruction that "[d]ismissal must be a sanction of last, not first, resort." *Poulis*, 747 F.2d at 869. Accordingly, we conclude that it is prudent to issue lesser sanctions at this stage and to revisit the possibility of dismissal in the event that Plaintiff and her counsel's deficient conduct continues.

## IV.   CONCLUSION

For the reasons explained above, we find McNulty and Carson to be in civil contempt for their failure to comply with Judge Brody's Discovery Order. Further, Carson's failure to appear at two consecutive status conferences is additional grounds for holding him in contempt. Accordingly, Plaintiff and Carson must pay attorneys' fees and costs, comply with Judge Brody's Discovery Order and other discovery obligations under the Federal Rules, and fully participate in the advancement of this litigation moving forward. We decline at this stage to grant Defendant's request for dismissal of McNulty's claims against it. However, we caution Plaintiff that dismissal remains a distinct possibility if her and her counsel's deficient conduct continues. An appropriate order follows.