IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA MCNULTY, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 19-5029 |
| | : | |
| THE MIDDLE EAST FORUM, et al | : | |
| Defendant | : | |

## **MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE             February 11, 2021

### I.   INTRODUCTION

Presently before the Court is Defendant The Middle East Forum's ("Defendant" or "MEF") Motion for Attorneys' Fees (Doc. 43), Plaintiff Patricia McNulty's ("Plaintiff") Response in Opposition (Doc. 44), and Defendant's Reply (Doc. 45).[1] Defendant submitted this motion in accordance with our prior order finding Plaintiff and her counsel, Seth Carson, Esq. ("Carson"), to be in civil contempt for failure to comply with a court order and to attend court-scheduled status conferences. (Doc. 41) (the "Contempt Order").

The Contempt Order and our accompanying Opinion (Doc. 40) set out our reasoning as to why Plaintiff and Carson must pay Defendant's attorneys' fees and costs associated with Defendant's reasonable efforts to obtain discovery responses following Plaintiff and Carson's

---

[1] We acknowledge that Plaintiff submitted her Response in Opposition eight days past the deadline by which we ordered her to respond to Defendant's Motion for Attorneys' Fees. *Compare* Doc. 41 (setting deadline of January 15, 2021) *with* Doc. 44 (Plaintiff's Response in Opposition filed January 23, 2021). By its reply brief, Defendant moves to have us strike Plaintiff's response as untimely. (Doc. 45 at 1–2.) While the Local Rules of this district undoubtedly confer on us the discretion to grant as unopposed any motions lacking a timely response, *see* E.D. Pa. R. 7.1(c), we will exercise our discretion not to proceed in that manner at this stage and will instead consider the arguments Plaintiff raised in her untimely response in opposition.

1

repeated failures to respond to discovery requests, to heed Judge Brody's orders to do the same, and to attend court-scheduled status conferences on two occasions, all for the simple purpose of obtaining compliance with these reasonable requests. To that end, we respond to the directive of Rule 37(a)(5)(A), which provides that "the Court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred."

By its motion, Defendant originally sought attorneys' fees in the amount of $4,283. (Doc. 44 at 5.) Plaintiff disputes this figure, arguing that it includes fees incurred as a result of activities outside the scope of the Contempt Order.[2] (Doc. 44 at 3.) Defendant replies that Plaintiff's opposition is untimely and frivolous, and seeks to increase its attorneys' fee award by $897 to account for time spent preparing its reply brief. Consequently, Defendant's total amount sought is $5,180. Defendant attached to this Motion contemporaneously recorded timesheets and affidavits of each attorney for whom Defendant seeks to recover costs, specifically, David J. Walton, Esq. ("Walton"), Leigh Ann Benson, Esq. ("Benson"), and Jonathan R. Cavalier, Esq. ("Cavalier"). (Doc. 43-1 at 7.) For the reasons set forth below, Defendant's Motion for Attorneys' Fees will be granted in part and denied in part.

---

[2] We note that Plaintiff has also dedicated a significant portion of her response to arguing that the Court should reconsider the award of attorneys' fees in its entirety. Plaintiff essentially asserts that she and Carson are not at fault for the discovery deficiencies that have pervaded this case and should not have been held in civil contempt in the first place. *See, e.g.*, Doc. 44 at 9–10. We will not address these arguments here, nor will we reconsider the award of attorneys' fees in its entirety. Indeed, we determined that Defendant is entitled to attorneys' fees in our Opinion and Order of December 30, 2020 ruling on Defendant's Motion for Contempt. (Docs. 40 & 41.) Defendant filed its Motion for Contempt on November 3, 2020. At no point within the nearly two months between Defendant's filing of that Motion and our decision on it did Plaintiff even bother to submit a response in opposition, let alone submit a timely response in accordance with our Local Rules. That Plaintiff now seeks to have us vacate that prior finding in another response that itself could be dismissed as untimely is simply confounding.

## II.      LEGAL STANDARD

District courts "enjoy wide, but not but not unlimited, discretion in fashioning appropriate compensatory sanctions" for civil contempt. Contempt damages "may include an award of attorneys' fees incurred in connection with the contempt proceedings, as '[o]nly with an award of attorneys' fees can [the injured party] be restored to the position it would have occupied had [the contemnor] complied with the [court order in question].'" *Cardionet, LLC v. Mednet Healthcare Techs., Inc.*, 146 F. Supp. 3d 671, 692 (E.D. Pa. 2015) (quoting *Robin Woods*, 28 F.3d at 400) (alterations in original). "[A]ttorneys' fee awards are 'remedial and designed to compensate complainants for losses incurred as a result of the contemnor['s] violations.'" *Robin Woods*, 28 F.3d at 401 (*quoting Roe v. Operation Rescue*, 919 F.2d 857, 869 (3d Cir.1990)). "As such, an award of attorneys' fees in a contempt proceeding, 'must not exceed the actual damages caused the offended party by a violation of the court's order.'" *Cardionet, LLC*, 146 F. Supp. 3d at 698 (E.D. Pa. 2015) (quoting *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir. 1982)). Consequently, in awarding attorneys' fees as contempt damages, district courts must "determine which fees relate specifically to the [contemnor's] contemptuous conduct." *Id.* (citing *Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc.*, 110 Fed.Appx. 283, 289 (3d Cir. 2004)).

To calculate the attorneys' fees and costs award to which Defendant is properly entitled, we utilize the "lodestar" method. *Microsoft Corp. v. United Computer Res. of New Jersey, Inc.*, 216 F. Supp. 2d 383, 387 (D.N.J. 2002). The lodestar is "the product of the product of the attorneys' reasonable hourly billing rate multiplied by the number of hours reasonably expended." *Arizona Premium Fin. Co. v. Keystone Surplus Lines*, 2008 WL 11514962, at *2 (E.D. Pa. Jan. 11, 2008) (citing *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546,

3

564 (1986)). To demonstrate reasonableness, the moving party must first "submit evidence to support his assertion as to the number of hours expended and the rate claimed."[3] *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 2003 WL 22006810, at *4 (E.D. Pa. Aug. 22, 2003) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990)). "The burden then shifts to the opposing party to challenge, with specificity, the reasonableness of the request." *Id.* Excessive, redundant, or otherwise unnecessary hours will be excluded from the fees awarded. *Horizon Unlimited, Inc. v. Silva*, 2002 WL 1896297, at *3 (E.D. Pa. Aug. 15, 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Ultimately, the court's discretion in adjusting the fee amount in light of the objections is "considerable." *Id.* (citing *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir.1989)). However, "[t]he district court cannot decrease a fee award based on factors not raised at all by the adverse party." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) (internal quotations and citations omitted).

## III.   DISCUSSION

We first set out the scope of the Contempt Order, which defines the activities for which Defendant is entitled to recover attorneys' fees. Next, we address each activity to which Plaintiff has objected as not properly recoverable under the Contempt Order. After determining which fees sought by Defendant are reasonable and within the scope of the Contempt Order, we adjust the total fee award amount accordingly.

---

[3] While the evidentiary standard "for contempt damages is not settled in the Third Circuit . . . those federal Courts of Appeals that have considered the issue have uniformly held contempt damages need only be established by a preponderance of the evidence." *Id.* at 692–93. We will follow the court's thoughtful analysis in *Cardionet* and apply the preponderance of the evidence standard.

**A. Reasonableness and the scope of the Contempt Order**

By her opposition, Plaintiff asks that we award Defendant costs and fees in an amount "estimated at about $1,200.00" (Doc. 44 at 10), as opposed to Defendant's proposed award of $5,180. (Doc. 45 at 6.) Plaintiff argues that her figure is the accurate "reflect[ion of] the amount described in the [Contempt Order]" (*Id.*), while Defendant's figure is the result of their "liberal interpretation of the Order to present the highest number possible." (*Id.* at 3.)

We note that Defendant has satisfied its initial burden to support its assertion of the hours expended and rates claimed through its submission of contemporaneously recorded timesheets and accompanying affidavits. *Keenan v. City of Philadelphia*, 983 F.2d 459, 472 (3d Cir. 1992). We further observe that Plaintiff has not raised any question as to the reasonableness of Defendant's stated hourly rates.[4] Plaintiff has, however, objected to specific entries of Defendant's timesheets as being unnecessary, redundant, or outside the scope of the Contempt Order. Here, we address each of those entries to determine whether they are properly recoverable under the Contempt Order. For clarity and consistency, we will address each challenged entry using the same format and organization as Plaintiff's opposition brief. *See* Doc. 44. However, it is first necessary to review the text and context and the Contempt Order.

With regard to an attorneys' fee award, the Contempt Order provided that Defendant is entitled to recover attorneys' fees and costs "incurred as a result of Defendant's filing of two

---

[4] We note nonetheless that Defendant's counsels' hourly rates are fair and reasonable given their skills, experience and reputation. *See* Doc. 43-1 at 1–3; *see also Loughner*, 260 F.3d at 180. Further, based upon the Court's experience and general knowledge of fees of this sort, we take judicial notice of the rates charged by national law firms practicing in Eastern District of Pennsylvania and find that Defendant's counsels' rates are reasonable and in line with the prevailing rates in this market. *See, e.g.*, *Jama Corp. v. Gupta*, 2008 WL 108671, at *8 (M.D. Pa. Jan. 4, 2008) (taking judicial notice of prevailing rates). In fact, Defendant's counsels' contracted rates in this case are substantially lower than their standard rates in similar cases. *See* Doc. 43-1 at 1–3.

letters with this Court regarding discovery deficiencies (Docs. 29 & 36), this Motion for Contempt, and appearances at the two Court-scheduled status conferences." (Doc. 41.) The "two letters with this Court" to which the Contempt Order refers were filed respectively on September 29, 2020, and October 29, 2020. (Docs. 29 & 36). In each letter, Defendant sought court intervention regarding discovery disputes and Carson's alleged failure to engage with Defendant to resolve them. Next, the "two Court-scheduled status conferences" were held respectively on September 29, 2020 and October 29, 2020. In each instance, Carson failed to appear despite having notice of the conferences and without providing any explanation for his absence. Finally, the "Motion for Contempt" is the underlying motion that gave rise to the Contempt Order. We now to turn to address each of Plaintiff's objections to Defendant's claims for attorneys' fees.

### 1. "Draft motion to compel responses to discovery requests"

Plaintiff first objects to Benson's timesheet entry of September 23, 2020 for 0.8 hours labeled "Draft motion to compel responses to document requests." (Doc. 44 at 3); (Doc. 43-1 at 7). Plaintiff argues that this entry is "outside the scope" of the Contempt Order. (Doc. 43 at 3.) We disagree but observe that Defendant has offered no specific comment with respect to this assertion in its reply brief and did not specifically explain how this activity is connected to the activities for which we found it was entitled to recover fees. That is, Defendant has not explained how the costs of drafting a motion to compel on September 23, 2020 is related to "Defendant's filing of two letters with this Court regarding discovery deficiencies, [the] Motion for Contempt, [or] appearances at the two Court-scheduled status conferences," as set out in the Contempt Order. (Doc. 41) (internal citations omitted).

We accept that there may well have been some connection between the September 23 timesheet entry and the September 29 letter, but we note that the Defendant opted to "present

6

[the] matter to [the court] by letter *rather than by motion*." (Doc. 29) (emphasis added). Further, there are subsequent separate entries on Defendant's timesheet that account for drafting and submission of the letter. (Doc. 43-1 at 7.) Because Defendant opted not to file this motion and instead filed a letter, for which it subsequently billed hours, we find, without any specific explanation from Defendant, that time spent drafting the motion was "unnecessary" within the context of an attorneys' fee award and that it would be duplicative to award Defendant fees incurred both in drafting the unfiled motion to compel and the related letter it ultimately filed. We will therefore deduct this entry from the award.

### 2. "Communications around the time of the September 29, 2020 call"

Plaintiff next objects to several entries of Defendant's timesheet that occurred near the time of the September 29, 2020 status conference that Carson failed to attend. Specifically, Plaintiff objects to: one entry where Walton communicated with Greg Roman ("Roman"), MEF's principal in this action and a co-defendant in his individual capacity;[5] two items where Walton communicated with Sidney Gold ("Gold") and Margaret DiBianca ("DiBiana"), Roman's individual counsel, regarding the upcoming status conference;[6] one item where Walton "prepared and attended the status conference;"[7] and one item where Walton held a phone call with Roman regarding the status conference after it had occurred.[8] (Doc. 44 at 4); (Doc 43-1 at 7.) Plaintiff argues that these items should not be included in Defendant's fee award because the

---

[5] *See* Entry of September 28, 2020 for 0.2 hours labeled "Communications with G. Roman re: status conference hearing."
[6] *See* Entry of September 28, 2020 for 0.2 hours labeled "Communications with M. DiBianca re: court hearing" and Entry of September 29, 2020 for 0.3 hours labeled "Telephone conference with S. Gold, Esq. re: status conference."
[7] *See* Entry of September 29, 2020 for 0.5 hours labeled "Prepare and attend status conference."
[8] *See* Entry of September 29, 2020 for 0.2 hours labeled "Telephone conference with G. Roman and counsel re: status conference."

7

calls were either not necessary or because they were with Roman or his counsel, and Roman is not a party to the underlying Motion for Contempt. (Doc. 44 at 4–6.)

First, we note that Walton's fees incurred "preparing and attending" the status conference are directly related to Plaintiff's contemptuous conduct and are recoverable. Further, we find that Walton's communications regarding the status conference with Roman in his capacity as MEF's principal are reasonable and properly included in the fee award. However, communications with Gold and DiBianca are not properly included in the award in that Gold and DiBianca represent Roman only in his individual capacity. Roman was not a party to the underlying contempt motion in his individual capacity, and these communications with his individual counsel therefore stray outside the bounds of the narrow dispute between MEF and Plaintiff. Accordingly, the entries of September 28 and 29 for communications with DiBianca and Gold will be excluded, while the entries of September 28 and 29 for communications with Roman and the entry of September 29 for preparing and attending the conference will be included.

### 3. "Letter to Judge Brody and [related] communications"

Plaintiff next objects to Walton's October 8, 2020 entry of 0.9 hours labeled "Letter to Judge Brody and communications with [Gold] re: same." Plaintiff objects to this entry on the basis that communications with Roman's individual counsel "cannot be the rationale for increasing the award from Plaintiff to Defendant." (Doc. 44 at 6.) In this instance, we agree. Indeed, the basis for the Contempt Order was Plaintiff's failure to provide basic discovery to MEF. MEF's award of attorneys' fees with regard to the discovery deficiencies is therefore narrowly limited to the dispute between it and Plaintiff. We acknowledge that Gold's client, Roman, is the principal of MEF and that communications with him in that capacity are necessary. However, we do not view communications with Roman's individual counsel, who

does not represent MEF and did not join in the letters regarding discovery deficiencies, to be specifically related to MEF's endeavors to obtain discovery from Plaintiff.

While communications with Gold make up only a portion of this entry, Defendant has provided no details regarding the amount of time dedicated separately to drafting the letter or to discussing it with Gold. We decline to venture a guess as to how this time was allotted. Further, an entry of 0.9 hours to prepare a one-page letter that occurred three weeks prior to the letter's submission strikes us as unreasonable, particularly considering that there is a subsequent entry closer to the letter's submission date that also accounts for its preparation. Accordingly, this entry will be deducted from Defendant's award.

### 4. "Telephone conference with L. Benson"

Within this category, Plaintiff actually challenges three separate timesheet entries. First, Plaintiff challenges Walton's October 9, 2020 entry of 0.3 hours for a "Telephone conference with L. Benson re: discovery issues and status conference." (Doc. 44 at 6–7.) Benson is Walton's co-counsel representing MEF. Plaintiff argues that the fees associated with this call should be excluded from Defendant's award in that it allegedly did not relate to any of the activities for which Defendant is entitled to recover under the Contempt Order. Plaintiff alleges that this call instead concerned a "Rule 16 conference in an analogous case that was consolidated with the instant case." (Doc. 44 at 7.) To support this assertion, Plaintiff cites the docket for the analogous case, which shows that a Rule 16 Conference was in fact held on October 15, 2020 prior to the two cases being consolidated. *See* 2:20-cv-02945-AB, Doc. 8.

In its reply, Defendant addresses this call only generally and in conjunction with the October 8 call discussed above. In doing so, Defendant maintains that this call was necessary to "evaluate the current status of discovery and strategize next steps." (Doc. 45 at 5.) However, we

observe that Defendant has not specifically refuted Plaintiff's allegation that this call related to the Rule 16 conference in the analogous case and not to the letter referenced in the Contempt Order. Moreover, our review of the record finds that this entry, which references a "status conference," was held only six days before the analogous Rule 16 conference took place, while the next scheduled conference that is the subject of the Contempt Order was three weeks away. The timing of these events lends support to Plaintiff's assertion that the call was in reference to the upcoming Rule 16 conference and not to the status conference that was three weeks away. That timing, coupled with Defendant's silence regarding Plaintiff's specific allegation gives us pause. Further, unlike the October 8 call discussed above, the contemporaneously recorded entry for this call does not specifically reference any of the activities identified in the Contempt Order. Consequently, we find that Defendant has not met its burden of proof with regard to this entry, and it will be excluded from the award.

Second, Plaintiff similarly challenges Benson's October 9, 2020 entry of 0.2 hours for an "Email to [Carson] re: discovery and scheduling conference." Plaintiff explains that this email "was actually the exchange of Rule 26(a) disclosures" in the analogous case referenced above. *See* 2:20-cv-02945-AB. Here again, Defendant has not specifically refuted Plaintiff's allegation regarding the contents and purpose of this email. Further, given that this email was sent from Defendant's counsel to Plaintiff's counsel, Carson's knowledge of its contents is the same as that of Defendant's counsel. This timesheet entry also does not make any specific reference to the activities identified in the Contempt Order. We find that Defendant has not satisfied its burden with regard to this entry, and it will therefore be excluded from the award of attorneys' fees.

Finally, Plaintiff disputes Defendant's October 28, 2020 entry of 0.3 hours labeled "Draft letter to Judge Brody re: MTC." Plaintiff argues that this entry is outside the scope of the

Contempt Order in that "MTC" refers to the motion to consolidate the analogous case with this one. Plaintiff's argument lacks merit. As Defendant explains, MTC refers not to "motion to consolidate," but to "motion to compel." (Doc. 45 at 5.) In fact, this "motion to compel" is the very letter referenced explicitly in the Contempt Order as "Doc. 36," the October 29 letter. This letter was characterized on the docket as a "motion to compel." Further, the timing of Defendant's timesheet entry shows that "MTC" is a reference to the October 29 "motion to compel" letter. Indeed, Defendant's entry is from October 28, 2020, and the motion to compel letter was filed on October 29, 2020. This entry is properly included within the award of attorneys' fees.

### 5. "The October [29], 2020 call with Judge Strawbridge"[9]

Plaintiff next objects to two of Defendant's October 29, 2020 entries. The first is Walton's entry of 0.5 hours labeled "Prepare for and attend court status conference with Judge Strawbridge, and the second is Benson's entry of 0.4 hours labeled "Status conference with Judge Strawbridge." (Doc. 44 at 7–8.) Plaintiff argues that these entries are duplicative and that one should be excluded from the award. We agree. We find that it was "unnecessary," within the context of an attorneys' fee award, for both Walton and Benson to have attended the October 29 status conference. *See, e.g.*, *Schofield v. Trustees of Univ. of Pennsylvania*, 919 F. Supp. 821, 829 (E.D. Pa. 1996). Because Walton's timesheet entry states that he "prepared for *and* attended" the status conference, while Benson's implies that she merely attended it, we find that Walton could have represented his client's interest at the conference on his own. We will therefore exclude Benson's timesheet entry from the award.

---

[9] Throughout her opposition brief, Plaintiff erroneously states that the second status conference that Carson failed to attend was held on October 30, 2020. In fact, it was held on October 29, 2020. (Doc. 37.)

### 6. "Strategy calls between counsel for Defendants"

Plaintiff's final specific objections are to Walton's October 29, 2020 entry of 0.5 hours to "Develop arguments for motion for contempt" and to Benson's October 29, 2020 entry of 0.3 hours labeled "Team strategy call re: contempt motion." Plaintiff argues that she "should not be required to pay for Defendants to kick around ideas in connection with any motion." (Doc. 44 at 8.) However, the Contempt Order expressly requires Plaintiff to pay Defendant's attorneys' fees "incurred as a result of Defendant's filing of . . . [the] Motion for Contempt." Further, we acknowledge Defendant's counsels' prudence in only one attorney having submitted a timesheet entry for a "team strategy call" that undoubtedly involved other attorneys. These costs are therefore properly included in the award of attorneys' fees.

Plaintiff further argues that the remainder of Defendant's entries related to the motion for contempt, taken together, should be reduced in that 4.7 hours is an unreasonable length of time to have spent "drafting, reviewing, and revising" the contempt motion. Specifically, Plaintiff objects to Benson's October 29 entry of 1.1 hours labeled "Draft motion for contempt"; Walton's October 30 entry of 1.3 hours labeled "Review and revise motion for contempt"; and Benson's October 30 entry of 2.3 hours by Benson labeled "Continue drafting motion for contempt." We find that these objections are without merit. Rather, a total of 5.5 hours (including the 4.7 hours spent drafting and revising challenged here and the 0.8 hours spent strategizing challenged above) is a reasonable amount of time for Defendant's counsel to have completed the motion for contempt in its entirety, including strategizing, drafting, revising, and ultimately filing the motion. The costs associated with these entries are recoverable.

### 7. Fees associated with this Motion for Attorneys' Fees

The final categories of fees we address are those related to Defendant's filing of this Motion for Attorneys' Fees. To the extent Plaintiff objects to Defendant's claims for fees incurred litigating this motion, any such objection is without merit.[10] Indeed, "[a] party entitled to an award of attorneys' fees is also entitled to reimbursement for the time spent litigating its fee application." *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 268 (3d Cir. 2002) (citing *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978)). Here, Benson billed a total of 2.9 hours on January 6 and 8, 2021 "drafting the instant fee motion, collecting and analyzing the supporting documentation, performing necessary research, revising the petition, and preparing it for filing." (Doc. 43-1 at 3.) Benson further billed 2.5 hours "drafting and revising [the] reply brief [in support of the motion]. (Doc. 45 at 6.) Cavalier billed 1.1 hours "reviewing and revising the petition [for attorneys' fees] and supporting certification prior to filing." (Doc. 43-1 at 3.) Cavalier then billed an additional 0.8 hours spent "reviewing and revising the draft [reply] brief." (Doc. 45 at 6.) Defendant is properly entitled to these fees,

---

[10] We note that Plaintiff has not clearly articulated a specific objection to these fees. However, Plaintiff referenced these fees as possibly being outside the scope of the Contempt Order. Further, in its reply brief, Defendant moved for additional fees within this category, which Plaintiff's opposition brief necessarily did not address. We therefore address these fees here, despite the lack of a clear objection by Plaintiff, for the sake of clarity and completeness.

13

as they were incurred litigating the motion for attorneys' fees following our finding civil contempt finding.[11]

### B. Calculating the proper attorneys' fee award

Having determined that many, but not all, of Defendant's claims for attorneys' fees are properly recoverable, we now turn to calculate the total amount of the award. Defendant originally moved to recover $5,180. (Doc. 45 at 6.) However, we have found that certain of Defendant's claims for fees are not properly included in the award. Accordingly, we have deducted those amounts from Defendant's final award and will award Defendant fees in the amount of $4,252, as explained throughout and as follows:

| Attorney | Date | Activity | Hours | Hourly rate |
|---|---|---|---|---|
| Walton | | | | $340 |
| | 9/28/20 | Communications with G. Roman re: status conference | 0.2 | |
| | 9/29/20 | Prepare and attend status conference | 0.5 | |
| | 9/29/20 | Telephone conference with G. Roman and counsel re: status conference | 0.2 | |
| | 9/29/20 | Review/analyze letter to Judge Brody | 0.2 | |
| | 10/29/20 | Prepare for and attend court status conference with Judge Strawbridge | 0.5 | |
| | 10/29/20 | Develop arguments for motion for contempt | 0.5 | |
| | 10/30/20 | Review and revise motion for contempt | 1.3 | |
| **Total** | | | 3.4 | **$1,156** |

---

[11] We note that Defendant's costs incurred in litigating this motion for attorneys' fees are not included in its contemporaneous timesheet submission. Rather, the hours and fees associated with this motion are outlined in the affidavits attached to the motion (Doc. 43-1) or in Defendant's reply brief. (Doc. 45.) While contemporaneous timesheets are the preferred method of illustrating the reasonableness of hours expended, they are not the sole method. *See, e.g.*, *Rode v. Dellarciprete*, 892 F.2d 1177, 1190–91. (3d Cir. 1990). In this case, we find that the affidavits and statements in the reply brief are "specific enough to allow [us] to determine if the hours hours claimed are unreasonable for the work performed." *Washington v. Philadelphia Cty. Ct. of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir.1996) (internal citations omitted). Moreover, Plaintiff has not objected to the sufficiency or specificity of Defendant's records.

| **Benson** | | | | $250 |
|---|---|---|---|---|
| | 9/29/20 | Revise and finalize draft letter to Judge Brody re: discovery deficiencies | 0.4 | |
| | 10/28/20 | Draft letter to Judge Brody re: MTC | 0.3 | |
| | 10/29/20 | Team strategy call re: contempt motion | 0.3 | |
| | 10/29/20 | Draft motion for contempt | 1.1 | |
| | 10/30/20 | Continue drafting motion for contempt | 2.3 | |
| | 1/6/21 – 1/8/21 | Drafting the [attorneys'] fee motion, collecting and analyzing the supporting documentation, performing necessary research, revising the petition, and preparing it for filing. | 2.9 | |
| | 1/23/21 – 1/27/21 | Drafting and revising reply brief | 2.5 | |
| **Total** | | | 9.8 | **$2,450** |

| **Cavalier** | | | | $340 |
|---|---|---|---|---|
| | 1/6/21 – 1/8/21 | Reviewing and revising the petition [for attorneys' fees] and supporting certification prior to filing | 1.1 | |
| | 1/23/21 – 1/27/21 | Reviewing and revising the draft [reply] brief | 0.8 | |
| **Total** | | | 1.9 | **$646** |

### Totals

| Attorney | Hours | Fees |
|---|---|---|
| Walton | 3.4 | $1,156 |
| Benson | 9.8 | $2,450 |
| Cavalier | 1.9 | $646 |
| **Award Total** |  | $4,252 |

15

## IV.	CONCLUSION

For the reasons discussed above, we conclude that Defendant is entitled to an award of attorneys' fees and costs in an amount of $4,252. We find that this amount accurately reflects the losses Defendant actually incurred as a result of Plaintiff's contemptuous conduct. *Robin Woods*, 28 F.3d at 401. As such, this award is consistent with the remedial nature of attorneys' fee awards. *Id.* Our order follows.