

March 25, 2021

**Jonathan R. Cavalier**
Direct Phone  215-665-2776
Direct Fax      215-701-2112
jcavalier@cozen.com

**VIA E-MAIL**
**STRAWBRIDGE_CHAMBERS@PAED.USCOURTS.GOV**

The Honorable David R. Strawbridge
United States District Court for Eastern District of Pennsylvania
James A. Byrne United States Courthouse
601 Market Street, Room 3-H
Philadelphia, Pennsylvania 19106

Re:  Patricia McNulty v. The Middle East Forum, et al. - Docket No. 2:19-cv-05029
     Letter Brief re: Order of March 18, 2021 (Doc. No. 62)

Your Honor:

On March 17, 2021, the Court held a hearing to discuss the issues raised in Defendants' February 5, 2021 letter brief and the additional dilatory conduct and failures to follow Orders by Plaintiff and her counsel, Seth Carson. During that hearing, the Court raised the issue of the two conferences in this matter that Mr. Carson missed in late 2020. Mr. Carson stated that he missed the first conference due to technical difficulties. With respect to the second, Mr. Carson claimed that "I was in a deposition on these cases where some of the lawyers on these cases appeared at the deposition, and I guess some of the other lawyers appeared on the phone with you." *See* Doc. No. 63 at p.49. Mr. Carson further stated that "My plan that morning was to try to stop the deposition and take the call with you and get back in the deposition." *Id.* In response to questioning from the Court, Mr. Carson further claimed that he recalled that "Mr. Riser from Sidney Gold's office was present…I think John was present at that deposition too." *Id.* at 50. Finally, Mr. Carson represented that he "can go on the calendar and tell you exactly what deposition it was and it's easy to find who was there." *Id.* at 51.

As a preliminary matter, Defendants write to correct the record and to state to the Court unequivocally that, having reviewed the deposition schedule, the transcripts and their respective calendars, no such deposition in this or any other of the matters concerning The Middle East Forum took place on October 29, 2020,[1] and no counsel for Defendants was present at any such deposition at the time of the scheduled conference with this Court.

Following the above-referenced hearing, this Court issued an Order requiring Defendants to submit, by close of business on March 25, 2021, a letter brief setting forth the following:

(1) The basis for their assertion that Plaintiff has in her possession relevant documentation that has not been produced, including by providing representative examples; and

---

[1] As this Court noted in its February 11, 2021 memorandum opinion, "Throughout her opposition brief [to Defendants' fee petition], Plaintiff erroneously states that the second status conference that Carson failed to attend was held on October 30, 2020. In fact, it was held on October 29, 2020." *See* Doc. No. 50 at p.11 n.9.

The Honorable David R. Strawbridge
March 25, 2021
Page 2

---

 (2) The basis for their assertion that they are entitled to receive e-discovery produced in native format with metadata, including the identification of the specific discovery requests at tissue, explanation of the practical need for the requested format, and discussion of the legal basis entitling Defendant to the requested format.

See Doc. 62 at p.2.  In accordance with that Order, Defendants respectfully submit the following letter brief.

 1. <u>Plaintiff has in her Possession Relevant Documentation that has Not Been Produced.</u>

As set forth in Defendants' prior submission (*see* Doc. No. 48 at pp.11-18, the sum total of Plaintiff's entire production in this matter consists of 17 text message threads (produced in an improper format without metadata) and Plaintiff's Telegram account (produced without an index).  Plaintiff has produced no emails, no information from the WhatsApp chat platform, and no information from her Facebook account.

In his response to Defendants' prior letter brief and at the hearing on March 17, 2021, Plaintiff's counsel represented to the Court that "Plaintiff, Patricia McNulty, did not use personal email." *See* Doc. 63 at p.24.  He further claimed that Plaintiff McNulty "kept a fine line between her personal life and her work life … and, therefore, she just doesn't have – there's not any sense of discovery in her email account."  *Id.* at 24-25. [2]

Plaintiff's counsel further represented that "there are no emails in her account that have any relation to The Middle East Forum that haven't been produced."  *Id.* at p28.  As demonstrated via the enclosed exemplars, these statements by Plaintiff's counsel are simply untrue.

Exemplars of relevant communications held by Plaintiff Patricia McNulty via her personal email addresses, which were produced by Lisa Barbounis (a Plaintiff in another action against Defendants in the Eastern District of Pennsylvania):

1. Email from Lisa Barbounis to Patricia McNulty (sent to McNulty's personal email address) via which Barbounis sends McNulty a draft resignation letter, apparently written by Barbounis for McNulty's signature, raising allegations of sexual harassment, sex discrimination and other actionable conduct that forms the very basis of the lawsuit that McNulty is currently pursuing.  *See* Exhibit A.

2. Email chain between Lisa Barbounis, Patricia McNulty and Delaney Yonchek (sent to McNulty's personal email address) including information concerning a non-disclosure agreement that all three were asked to sign by The Middle East Forum around the time of Plaintiff's initial complaint.  *See* Exhibit B.

3. Email chain between Lisa Barbounis and Patricia McNulty (sent to McNulty's personal email address) wherein Plaintiff and Barbounis discuss matters relating to Barbounis' job issues and complaints about her reporting obligations, and McNulty's response in support of Barbounis.  *See* Exhibit C.

---

[2] At the hearing, Plaintiff's counsel represented that Plaintiff McNulty is not pursuing any claims for economic loss in this matter.  Defendants accept that representation and agree that Plaintiff's non-pursuit of such claims renders irrelevant any documentation *solely* relevant to economic loss, and does not seek to compel production of such documentation here.  *See* Doc. No. 63 at pp. 12-13.

The Honorable David R. Strawbridge
March 25, 2021
Page 3

4. Text message chain between Lisa Barbounis and Plaintiff Patricia McNulty discussing matters pertaining to the Middle East Forum in which Barbounis requests Plaintiff's personal email address, which Plaintiff provides.  *See* Exhibit D

5. Instagram direct message chain between Lisa Barbounis and Plaintiff Patricia McNulty spanning 99 pages and containing all manner of discussion between McNulty and Barbounis relevant to Plaintiff's emotional state and discrimination claims.[3]

These limited examples[4] are highly relevant to Plaintiff's claims in this case and to Defendants' potential defenses of those claims.  Based on the fact that these emails and other communications were not produced by McNulty and McNulty's claim that she "never" used personal email or other channels to discuss matters relevant to this case, it can be inferred that McNulty never performed a reasonable review of her personal email accounts and, instead, simply relied on her incorrect belief that no such emails existed in her personal accounts.

Moreover, such documents are clearly responsive to several of Defendants' document requests, including the following:

2. All documents relating to Plaintiff's employment at The Forum…

3. Any and all correspondence, memoranda and notes to and from Plaintiff about any matter related to Plaintiff's employment with The Forum.

4. Any and all correspondence, memoranda and notes to and from Plaintiff about the facts alleged in Plaintiff's Amended Complaint in this action.

6. All documents, including emails and other electronic communications, exchanged between you and any current or former employee or agent of The Forum from October 23, 2017 to present relating to any or all of the conduct alleged in the Amended Complaint. This request includes, but is not limited to, letters, notes, email messages, social media messages and postings, and text messages.

12. All documents relating to the damages or other relief you are seeking in this action.

13. All documents relating to your alleged emotional distress.

*See* Exhibit E.

To be clear, the above is merely the tip of the proverbial iceberg.  Defendants are unable to analyze the potentially relevant and responsive contents of Plaintiff's personal email accounts and other communications platforms because she has not produced anything from them despite them containing at least some clearly relevant and responsive information.  She is obligated

---

[3] As this document is 99 pages long and contains potentially sensitive and irrelevant information pertaining to both Barbounis and McNulty, Defendants have not attached the document as an exhibit to this filing.  Should the Court wish to view this document, Defendants will gladly submit it for *in camera* review.

[4] At the March 21, 2021 hearing, the Court requested that Defendants "not overwhelm" the Court with examples of this kind.  Defendants have additional examples of such emails and are continually reviewing the voluminous production in the *Barbounis* matter, and will gladly provide them to the Court upon request.

The Honorable David R. Strawbridge
March 25, 2021
Page 4

---

under the Federal Rules to perform a diligent search of those accounts and to produce any information responsive to Defendants' requests, including not only information related directly to her work at the Middle East Forum, but to any emails reflecting her positive or negative emotional state and other unrelated stressors in her life.[5]

   2. <u>Defendants Are Entitled to Production of Plaintiff's Electronically Stored Information in Native Format with Metadata.</u>[6]

In their document requests propounded to Plaintiff McNulty, Defendants requested that all electronically stored information be produced in accordance with Federal Rule of Civil Procedure 34(a)(1)(A).  *See* Exhibit E at p.2.  Defendants also specifically requested that "All documents shall be produced as text-searchable image files (e.g., TIFF), while preserving the integrity of the original formatting and metadata.  Documents unable to be so converted shall be produced in native format."  *Id.* at p.5.  Plaintiff never objected to Defendants' requested production format.

It is settled law that "under Federal Rule of Civil Procedure 34, a party may specify the form of production of documents as including metadata and the responding party then must either produce it in the form specified or object."  *Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 106 (E.D. Pa. 2010).  The Courts of the Third Circuit follow the guidance of the Sedona Principles concerning electronic discovery, which provide:

> Certain metadata is critical in information management and for ensuring effective retrieval and accountability in record-keeping. Metadata can assist in proving the authenticity of the content of electronic documents, as well as establish the context of the content. Metadata can also identify and exploit the structural relationships that exist between and within electronic documents, such as versions and drafts. Metadata allows organizations to track the many layers of rights and reproduction information that exist for records and their multiple versions. Metadata may also document other legal or security requirements that have been imposed on records; for example, privacy concerns, privileged communications or work product, or proprietary interests.

---

[5] With Plaintiff's acknowledgement that she is not pursuing any economic losses, her only damages claims in this action relate to her emotional distress damages, making such information, whether indicative of a person suffering emotional distress or the converse, highly relevant in this action.

[6] For the Court's convenience, "native file format" is the "file structure defined by the original creating application, such as a document created and opened in a word processing application."  "Metadata" is "[d]ata typically stored electronically that describes characteristics of ESI, found in different places in different forms.  While some metadata, such as file dates and sizes, can easily be seen by users, other metadata can be hidden or embedded and unavailable. . .. Allowing discovery of these metadata fields permitted the parties to seek information that may not have been available in the documents' text."  *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 161 (3d Cir. 2012) (citing The Sedona Conference, The Sedona Conference Glossary: E–Discovery & Digital Information Management 35 (Sherry B. Harris et al. eds., 3rd ed. 2010)).

The Honorable David R. Strawbridge
March 25, 2021
Page 5

---

*Id.* (citing Appendix E to The Sedona Guidelines). As the Court in *Romero* noted, "Principle 12 of the Sedona Principles expressly recognizes that the request for metadata is not outside the scope of normal electronic discovery:

> Absent party agreement or court order specifying the form or forms of production, production should be made in the form or forms in which the information is ordinarily maintained or in a reasonably usable form, taking into account the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search, and display the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case.

*Id.* (citing *Aguilar v. Immigr. & Customs Enf't Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 356 (S.D.N.Y. 2008) and The Sedona Principles). Given the benefits of producing documents in native form with included metadata, courts place the burden on the producing party to demonstrate why such information cannot or should not be produced. *Id.*

As noted in Defendants' February 5, 2021 letter brief, these issues, and Defendants' entitlement to have electronically stored information produced in native format with metadata, was litigated exhaustively before Judge Wolson in the *Barbounis* matter, who ultimately disregarded Plaintiff's counsel's claims of ignorance regarding electronically stored information and hardship in such a production, and held, in pertinent part, as follows:

> **THE COURT**: Here's the thing. Ultimately, it's not my problem. Okay? It's your problem how you get the defendants the data to which they're entitled. But they are entitled, not just because of my order but because of the Federal Rules of Civil Procedure, to metadata that will allow them to the parent-child relationships of ESI that you have produced. And I don't care –
>
> Mr. Carson, I can see you, so I can see you smirking at me and rolling your eyes.
>
> **MR. CARSON**: Your Honor, I'm by no means smirking at you and rolling my eyes. What I am doing is expressing frustration, because I don't even know what that means, what the parent-child relationship is, and –
>
> **THE COURT**: That's part of the problem. It is your responsibility to know that.
>
> **MR. CARSON**: But, Your Honor –
>
> **THE COURT**: First of all, we raised this at an earlier hearing. We talked about it. So if you didn't know what it meant, you either had to ask or go educate yourself.

The Honorable David R. Strawbridge
March 25, 2021
Page 6

---

*See Barbounis* ECF, 19-cv-05030, No. 92 at p.24. As such, Plaintiff's counsel is familiar with his obligations and the requirements of the Federal Rules mandating the production of electronically stored information in native format with associated metadata, and aware of the fact that he must produce that information in the proper form. There is no substantive difference between the discovery issues litigated before Judge Wolson and those now before this Court.

Although it is not Defendants' burden under the Federal Rules to show a need for production of Plaintiff's electronically stored information in proper native format with metadata, Defendants nevertheless represent that such information is necessary to be able (1) to understand what attachments were attached to what text messages and emails and to be able to view those attachments, to verify the authenticity of documents, (2) to understand when documents were actually created or modified by Defendants (or their agents); (3) to sort, review, and search electronic documents by metadata fields, including by text keyword search, among others.

By way of example, a key issue overlapping in both the instant matter and the Barbounis case concerns text messages allegedly sent to Plaintiff McNulty by Plaintiff Barbounis in early 2018 concerning an event in Israel, which both Plaintiff McNulty and Barbounis claim are illustrative of their sexual harassment claims against Defendants. Plaintiff McNulty thereafter stated that she deleted those text messages from her phone. *See* Exhibit F.[7]

On October 31, 2018, Barbounis wrote to Plaintiff McNulty and asked her to "send me the texts." *Id.* McNulty responded, stating, "K I gotta see if my sister still has those screenshots, I deleted everything!". *Id.* Apparently, Plaintiff McNulty took screenshots of Barbounis' text messages, sent them to her sister, later retrieved them from her sister and provided them to Barbounis, who then produced them in her case.

Defendants need (and are entitled to) the metadata from the text messages between McNulty and Barbounis and the metadata from the screenshots themselves to have any hope of answering the many questions raised by the production of these documents, including the authenticity of the documents, the chain of custody through which they were ultimately produced, who had the documents in their possession, how they were created and more. Defendants likewise need (and are entitled to) the communications between McNulty and her sister in which these text messages were discussion in order to determine how they were transmitted to McNulty and then to Barbounis, to evaluate the authenticity of the messages and when they were sent, and how and when the documents were created.[8]

Plaintiff never objected to Defendants' requests for production of electronically stored information in native format with included metadata, and has offered no reason for her refusal to comply with the Federal Rules beyond an unsupported (and incorrect) claim that doing so would

---

[7] Plaintiff McNulty also claims that she lost the phone containing those text messages in October of 2018.

[8] These documents are clearly responsive to any number of Defendants' document requests, including the following: "7. All documents relating to and supporting the allegations of sexual misconduct occurring in Israel as alleged in Plaintiff's Amended Complaint, including but not limited to the allegations set forth in paragraphs 204-249 of the Amended Complaint. This request includes but is not limited to, letters, notes, email messages, social media messages and postings, and text messages." *See* Exhibit E at p. 7.

cost "tens of thousands of dollars."[9]  As the Federal Rules, the Third Circuit and the Eastern District have made clear, such a statement is insufficient to excuse Plaintiff's noncompliance.

## Conclusion

As set forth above, despite having over a year to do so, and despite having been ordered to do so by this Court on multiple occasions, Plaintiff has failed to produce all responsive documentation in her possession, and should be again ordered to do so after conducting a diligent search of her personal email addresses and other electronically stored information. Defendants are unable to evaluate the full extent of Plaintiff's discovery noncompliance due to the sheer and total lack of any documentation from her personal communications having been produced.[10]  Further, Plaintiff should be ordered to produce all relevant information, including the limited text messages that she already produced, in accordance with the Federal Rules of Civil Procedure, in native format with associated metadata.

Sincerely,

COZEN O'CONNOR

/S/ JONATHAN CAVALIER

JRC

Cc:  Sidney Gold, Seth Carson, William Rieser, and Leigh Ann Benson

---

[9] Even if this were true, Plaintiff ignores the tens of thousands of dollars spent by Defendants in this case in an effort to obtain the discovery to which they are entitled and to remedy the Plaintiff's contempt of this Court.  Defendants reserve their right to seek leave to file a petition for attorneys' fees and costs to remedy Plaintiff's further contempt in this action since December 30, 2020 (the date of the Court's prior Order granting Defendants' previous motion for fees).

[10] Plaintiff McNulty also confirmed during her deposition that she used at least two other email addresses during the previous five years.  No information from those addresses has been produced.